## MARCUS BELDEN

*v.*

## SAMUEL D. PERKINS.

1. ASSUMPSIT—*for money had and received.* In an action of assumpsit for money had and received, the main inquiry is, whether the defendant holds money which, in equity and good conscience, belongs to the plaintiff.

2. It is frequently called an equitable action, and it approaches nearer to a bill in equity than any other common law action, and, indeed, has many of the advantages, without the formalities and dilatory proceedings of a chancery suit.

3. If a plaintiff delivers property to his creditor, to be sold by the creditor at his option, and the creditor sells to a third party, who converts the property into money, such plaintiff can not recover in a suit against such purchaser for money had and received.

4. PLEDGE—*what constitutes.* Where a tenant placed a lot of corn in the hands of the administrator of his landlord, as security for the payment of rent due, it was *held,* the legal status was that of pledged property; and the mere fact that the pledgor had the right to determine the time when the corn should be sold, did not affect the legal character of the contract.

5. MEASURE OF DAMAGES—*where pledged property has been sold.* Where property held in pledge, has been sold by the pledgee, without notice to or the consent of the pledgor, when, by the terms of the contract under which the property was pledged, the pledgor had the right to determine the time when the sale should be made, in an action by the pledgor against the purchaser from the pledgee for money had and received, the plaintiff will be entitled to the market value of the property at the time it was converted into money by the defendant.

6. RECOUPMENT. If the owner of property delivers the same to his creditor, as security for a debt, but reserves the exclusive right to determine when and how it shall be sold, and the creditor sells it without the knowledge or consent of the owner, in an action by the owner against the creditor for money had and received, the creditor may recoup the amount of the debt for which the property was pledged, and the same rule would apply if the suit was against the purchaser of the property.

7. PLEDGE OF PROPERTY TO SECURE A DEBT—*rights and power of pledgee.* Where property is pledged, the pledgee acquires a special property therein, and he may transfer the same without impairing the original lien thereon, or giving the owner a right to reclaim it on any other or better terms than he could have done before such transfer.

29—78TH ILL.

78   449
22a  422

78   449
156  380

78   449
65a  258

78   449
172  627

78   449
96a  1271

78   449
99a  1  38

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

This was an action of assumpsit, for money had· and received, brought by Samuel D. Perkins, against Marcus Belden, in the circuit court of Warren county.

The plaintiff, being indebted to the estate of A. G. Kirkpatrick, sometime in the winter of 1872–3, delivered a lot of corn to the administrator of the estate, the proceeds of which, when sold, were to be applied to the payment of plaintiff's indebtedness; the plaintiff claiming that he, and not the administrator, had the right to sell the corn. The administrator sold the corn to the defendant, Belden, who shipped and disposed of it, and this suit was brought to recover the money received by him for the corn. The plaintiff recovered a judgment for the market value of the corn, and the defendant appealed to this court.

Messrs. GLENN & MATTHEWS, for the appellant.

Messrs. STEWART & PHELPS, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of assumpsit, brought by Samuel D. Perkins, in the circuit court of Warren county, against Marcus Belden, to recover the value of a certain quantity of corn.

A trial of the cause was had before a jury, which resulted in a verdict and judgment in favor of the plaintiff for the sum of $945, to reverse which, the defendant brings the record here by appeal.

The declaration contains only the common counts, to which the defendant pleaded the general issue and payment.

This being an action to recover for money had and received, it must be governed by the rules that apply to actions of that character.

In an action of assumpsit, for money had and received, the main inquiry is, whether the defendant holds money which, *ex æquo et bono,* belongs to the plaintiff.

It has been frequently called an equitable action, and, as is said in *Claflin* v. *Godfrey,* 21 Pick. 1, it approaches nearer to a bill in equity than any other common law action; and, indeed, has many of the advantages, without the artificial formalities and dilatory proceedings of a chancery suit. *Taylor* v. *Taylor,* 20 Ill. 650; *Watson* v. *Woolverton,* 41 ib. 241.

Under the equitable rules which must control in the trial of a cause for money had and received, the main inquiry in this case is, whether this judgment can be sustained.

It appears, from the record, that in the year 1868, appellee leased certain lands of A. G. Kirkpatrick, for the years 1869, 1870 and 1871. In the month of March, 1870, Kirkpatrick died, and in the year 1872, appellee held over, under the leases, and raised the corn involved in this action.

In the fall of 1872, appellee was indebted to the estate of Kirkpatrick, upon the leases, over $800, and, upon being urged by Patterson, administrator with the will annexed, of the estate of the deceased, for payment, this corn was delivered, in cribs belonging to the estate, in Kirkwood, under an agreement, that, when sold, the proceeds should be applied in payment of the rent due upon the leases.

In the fall of 1873, the administrator of the estate sold the corn, together with other corn belonging to the estate, to appellant, for $32\frac{1}{2}$ cents per bushel. Subsequently, appellant shelled and shipped the corn, and paid the purchase money over to the administrator. Thus far, there is no substantial disagreement between the parties on the facts.

The appellee, however, claims that, by the contract, he, alone, had the right to sell the corn, and no authority was given the administrator to make sale, while, on the other hand, the administrator claimed that the corn was sold to him, and he had the authority to sell when he saw proper, and, at

such time as he did sell, appellee was to be credited with the then market price of the corn.

It was a question of fact for the jury to determine, from the evidence, what the contract really was, and we shall not assume the responsibility of determining whether the contract was as testified to by appellee, or by J. M. Kirkpatrick, who made the contract for and on behalf of Patterson, the administrator; that would be usurping the province of the jury.

If, however, the contract was as claimed by the administrator, it is not pretended that appellee could recover. If, on the other hand, the contract was as claimed by appellee, in the view we take of the law that must govern the facts in the case, the judgment can not be sustained.

It is true, when the contract was made, the estate of A. G. Kirkpatrick had no lien for that portion of the rent due for either of the years prior to 1872, but, when the corn was delivered into the possession of Patterson, under a contract that he should hold the possession of the property until it should be sold, and, upon a sale, the proceeds should be paid to him to be applied upon the rent due on the leases, he held the property as a pledge.

That the property was held as a pledge, and the relation of pledgor and pledgee attached to the parties, we think is clear from the authorities.

Kent, Vol. 2, page 577, defines a pledge to be a bailment or delivery of goods by a debtor to a creditor to be kept till the debt be discharged.

Substantially the same definition is given by Story, in his work on Bailments, sec. 286.

The corn in question was placed by appellee in the possession of Patterson, to be held as security for the payment of the rent due upon the leases. Such was clearly the object of the transaction. Its legal status was that of pledged property.

The mere fact that appellee had the right to determine the time when the corn should be sold, could not affect the legal character of the contract.

Patterson, the pledgee, having sold the property to appellant, a stranger to the transaction, and he having converted it into money, the debt for which the property was pledged remaining unpaid, in an action brought by the pledgor against appellant, the question to be determined then is, what is the measure of appellee's recovery, and what are the rights of appellant?

As the corn was sold without notice to or the consent of appellee, when, by the terms of the contract under which the property was pledged, he was entitled to determine the time when a sale should be made, he will be entitled to the market value of the corn at the time appellant shipped and converted it into money. Indeed, this action, for money had and received, is predicated upon the theory that appellee affirms the act of appellant in taking the corn and converting it, but seeks to recover the money received for the property.

The appellee, however, received the market value of the corn, no deduction having been made for the amount of the debt the property was pledged to secure. This can not be sustained.

Had Patterson converted the corn into money, and had appellee brought the action against him, without the payment of the debt the corn was pledged to secure, it can not be denied that Patterson would have been entitled to recoup the amount due upon the leases against appellee's demand.

This rule is founded in justice, and is sustained by the authorities.

In Story on Bailments, sec. 349, it is said, " If an action is brought, the pledgee may recoup his debt in the damages." See also, *Jarvis* v. *Rogers*, 15 Mass. 389 ; *Stearns* v. *Marsh*, 4 Denio, 227 ; *Ward* v. *Fellers*, 3 Mich. 288.

If, then, the pledgor could not recover the value of the property from the pledgee without a payment of the debt for which the property was pledged, does not the same principle apply in an action against the vendee of the pledgee?

Where property is pledged, the pledgee acquires a special property in the goods, and we are aware of no reason or principle that would prevent a transfer, nor can we perceive any reason why the mere transfer of the pledged property should destroy the original lien.

In *Jarvis* v. *Rogers*, 15 Mass. 389, after a review and reference to authorities, it is said, by one of the judges, in delivering the opinion of the court, "From these cases it appears that the pawnee may deliver the goods to a stranger, without consideration, or he may sell and assign all his interest, absolutely, or he may assign it conditionally, by way of pawn, without, in either case, destroying the original lien, or giving the owner a right to reclaim them on any other or better terms than he could have done before such delivery or assignment."

In Story on Bailments, sec. 327, it is said, "But, whatever doubt may be indulged as to the case of a mere factor, it has been decided, that, in case of a strict pledge, if the pledgee transfers the same to his own creditor, the latter may hold the pledge until the debt of the original owner is discharged."

We are therefore satisfied, both upon principle and from the authorities, that appellant had the right to show the amount of the debt for which the corn was pledged to Patterson, and, as his assignee or vendee, recoup the amount of that debt against appellee's cause of action.

This will be but just, and, as the action is an equitable one, it will as nearly preserve the rights of appellee, Patterson, and appellant, as appears possible in an action at law.

The judgment will be reversed, and the cause remanded for another trial, consistent with this opinion.

*Judgment reversed.*