Judge Simpson
delivered the opinion of the Court.
A. H. Hynes being the owner of a tract of land lying in Butler county, on which there was a large distillery and mill that he had been managing and conducting for at least one year previously, sold, on the 19th day of June, 1848 to Stewart & Owens, of Louisville, one undivided half of the land and the improvements thereon, consisting of a distillery, mill, blacksmith shop, dwelling house, &c., and also the undivided half of a negro man, four flat boats, one complete set of blacksmith’s tools, and various other enumerated articles of personal property, together with the. grain on hand, and every other thing in use about the establishment, for the sum of seven thousand dollars, payable in instalments. The parties, at. the same time, entered into a contract of partnership for the purpose of running and managing the distillery and mill for-the term of three years. Hynes was to furnish one half of the means necessary to carry on the business, and was to devote to it so much of his personal attention as its interests required.
At the time this agreement was entered into, Hynes was deeply involved in debt. On the 8th day of Au *430 £ust nex*- he conveyed to his father, Thomas Hynes, and Josiah Pilisbury,iu trust for the payment of his debts, all his estate of every description, including debts due to him. He had, however, previously transferred to Hynes and Pillsbury a part of the notes executed to him by Stewart & Owens for the purchase money. He immediately afterwards went off, and has not since returned. After the partnership was entered into, he neglected the business of the concern, did not give to it any of his services or attention, and drank to excess until the time he made the assignment of his effects and left the country.
On the 3d da.y of August, 1848, Stewart & Owens deposited in the Bank of .Kentucky, at Louisville, to the credit of the branch of said bank at Bowling-green the sum of two hundred and fifty dollars for use of their partner, A. H. Hynes. The branch of the bank at Bowlinggreen was informed by the corresponding Clerk of the mother bank, who made a mistake on the occasion, that the deposit was for one thousand two hundred and fifty dollars, instead of two hundred and fifty only. Hynes, although he had been informed by his partners of the true amount of the deposit, drew from the branch bank the sum of twelve hundred and fifty dollars, a few days before he left the country.
In August 1848, the President, Directors, & Co. of the Bank of Kentucky exhibited a bill against Hynes and Stewart & Owens, setting forth the facts in relation to the deposit, alleging that Hynes had left the State of Kentucky and was a non-resident, -and praying for a decree against Stewart & Owens for the one thousand dollars overdrawn.
In the month of September next' following, Stewart & Owens filed their answer, which they made a cross-bill against the complainants in the orignal bill, and A. H. Hynes and the persons interested under the deed of trust, made by the latter, and prayed for a rescisión of both the contract of purchase and of partnership. They charged in their cross-bill that A. H. tlynes had practiced a fraud on them in concealing from them his true *431 condition and utter inability to comply with the terms of the agreement of partnership at the time the contracts were entered into, and in misrepresenting the power and efficiency of the engine which was attached to the distillery, and in falsely representing the engine and machinery to be in good order, the fact being otherwise. That they were compelled to expend a considerable sum of money in making the necessary repairs, and that Hynes had not furnished any of the means required for that purpose, or to carry on the business of the firm. They alleged that had they have known the true situation of Hynes, and the actual condition of the engine and machinery belonging to the distillery, they would not have made the purchase, nor entered into the contract of partnership. They also relied upon other misrepresentations that are not, however, established by the proof, and need not therefore be noticed.
Decree of the Chancellor.
It appeared that during the few months the partnership continued, it sustained a loss of three thousand dollars, the whole of which has been paid by Stewart & Owens. The Court below set aside and vacated the contract of purchase and of partnership, and gave Stewart & Owens a lien on the undivided half of the tract of land, to secure the payment of fifteen hundred dollars, one half of the aforesaid loss. The claimants under the deed of trust, and the assignees of the notes which were executed for the purchase money, have appealed, and Stewart & Owens have assigned cross-errors. The President, Directors & Co., of the Bank of Kentucky did not obtain any relief, and, as they are not parties to this appeal, their claim will not be further noticed.
The contracts of purchase and of partnership were entered into at the same time, and constituted in legal contemplation but one contract. The agreement to carry on the business in partnership for the term of three years, was evidently one of the chief inducements with Stewart & Owens for making the purchase. They resided in the city ef Louisville, at a considerable dis *432 tance from the place where the business was to be carried on, and could not give it their personal attention. Hynes who had been previously engaged in the business, as the owner of the property, was relied upon by them for its exclusive and successful management. There is no reason to believe that they would have purchased one half of the property, had there been no agreement with Hynes to conduct the business of the concern in partnership.
Where a contract of partnership is superinduced by the fraud of one of the parties, and a failure to comply with the terms thereof, the Chancellor may rescind the contract of partnership.
Hynes was insolvent at the time the agreement was made. The evidence shows that he was sensible of his true condition, and carefully concealed it from Stewart & Owens, tie had not the means to comply with his part of the contract, and was conscious of his inability to do it. His subséquent conduct proves that he contemplated the perpetration of a fraud in the original contract.- He transferred, in a very short time after they were executed, the notes for the purchase money that he obtained from his partners. He conveyed, in trust, all the balance of his property for the payment of debts that he owed at the time the partnership was entered into. He was guilty of a gross fraud in taking advantage of the mistake of the bank, as to the amount deposited to his credit, and overdrawing the sum of one thousand dollars, when he knew the true amount of the deposit, and that he was not entitled to the sum drawn. He became more and more dissipated and entirely reckless in his conduct, and in less than two months after the formation of the partnership, absconded and left the country. He misrepresented to his partners, before the agreement was entered into, the true condition of the property, and induced them to give him several thousand dollars more, for one half of it, than its real value. He admitted, after the sale, that he had induced Stewart & Owens to purchase, at so high a price, by their reliance upon his knowledge of machinery and his competency to manage the business successfully, and that he had informed them that their purchase would furnish him with means to comply fully and satisfactorily with his part of the contract; yet, uotwith *433 standing that statement to them, he almost immediately thereafter applied their notes to the payment of preexisting liabilities. Considering all these facts and circumstances, we i’egard the fraud as fully established, and the decree of the Chancellor rescinding the contract of purchase and of partnership as correct; and as the expenditures of Stewart &.Owens were made under the contract, and a part of them for the improvement of the property, they were entitled to an equitable lien upon the property for the payment of the balance due them. As the suit is still pending, the Court below can make any decree that is equitable and proper in relation to the slave embraced by the contract. There is no error, therefore, to the prejudice of the appellants.
Where a partnership .contract is rescinded for fraud in the contract, the Chancellor will do equity to the party who has been seduced into the contract, and secure him against loss, provided creditors of the firm be not prejudiced thereby.
Stewart & Owens, by their cross-errors, insist that the whole loss incurred by them, should have been decreed against Hynes, instead of one half only. The partnership has not merely been dissolved, but. the agreement itself rescinded, upon the ground of fraud, and, therefore, that they have an equitable right to be indemnified against all loss.
Had a partnership existed and a dissolution been decreed upon the ground of the misconduct of Hynes as partner, the loss would have fallen upon the firm, and Stewart & Owens must have sustained one half of it. But an agreement of partnership may be -rescinded where a person has been induced to enter into it by fraudulent representations, and the partnership be declared void: (Collyer's Law of Partnership, 199; Gow on Partnership, 121.) When the contract is rescinded and the partnership declared void upon the ground of fraud, the injured party, except so far as the interests of the creditors of the film may be concerned, should not be regarded as a partner, or subjected loany of the loss which may have been sustained bv him. lie is entitled to redress against the perpetrator of the fraud to the extent of the injury that be may have sustained, unless he should continue the partnership after he became apprized of the commission of the fraud. It seems to us, therefore, that Stewart & Owens are entitled to *434 a decree against Hynes for the whole sum expended by them under the contract, being three thousand dollars over their receipts from the same source. The decree, therefore, as rendered, is to their prejudice.
Fry 4* Page for plaintiffs ; Speed for defendants.
Wherefore, the decree is 'affirmed, upon the original errors, andjreversed.upon the cross-errors, and cause remanded that a decree may be rendered against Hynes in favor of-Stewart & Owens for the sum of three thousand, instead of the sum of fifteen hundred^ dollars, and their lien upon the property be enforced for its payment.