James F. Madigan *vs*. Mark J. McCann, Sr., & others.

Suffolk. February 5, 1963. — May 7, 1963.

Present: Wilkins, C.J., Spalding, Whittemore, Kirk, & Reardon, JJ.

*Fraud. Deceit. Sale,* Rescission. *Equity Jurisdiction,* Rescission. *Equity Pleading and Practice,* Master: findings.

Findings by a master in a confirmed report in a suit in equity for rescission, showing that the plaintiff paid for an interest in a partnership business and made further substantial contributions to the business in justifiable reliance on false representations, deliberately made by the defendants acting in concert and with intent to deceive the plaintiff, as to ownership by one of them of the interest supposedly purchased by the plaintiff, which in fact was owned by another person, and as to the accounts receivable and payable, the inventory, and profits of the business, supported a decree ordering the defendants jointly and severally to repay to the plaintiff the amounts of the purchase price paid and other contributions made by him, with interest.

Bill in equity filed in Superior Court October 31, 1961.

The suit was heard by *Tauro, J.,* on a master's report.

*George N. Prifti & John P. Nalty,* for the defendants, submitted a brief.

*James R. DeGiacomo* for the plaintiff.

REARDON, J.   The plaintiff seeks to rescind his purchase of an alleged fifty per cent partnership interest in a hardware business conducted as "McCann Bros." in West Roxbury, because of the fraud and misrepresentations of the defendants.   There was no appeal from an interlocutory decree confirming the master's report and the case is here on appeal from a final decree ordering the defendants (save Dorothy J. McCann to whom reference is not hereinafter made) to pay the plaintiff the total sum due him as found by the master, together with interest and costs.

The plaintiff was found to have been the victim of calculated deceit practised upon him in concert by the defendants.   The defendants, in various ways and at various times, represented that one of them owned and was entitled to sell a half interest in the business when, in fact, that interest was owned by another person and, further, that the business was profitable when, in fact, it showed constant losses.   Among the specific deliberate misrepresentations made by them with intent to deceive were these: that no books or records were available other than a simplified sales book which set forth daily receipts only; that accounts payable were $5,600 when they were at least $10,000; that accounts receivable were $3,000 when they were $2,000; and that inventory was more than $20,000 when it was $9,000. The plaintiff reposed great confidence in the defendants to the extent that he never retained the services of an attorney or an accountant in any of the negotiations or transactions. On or about August 3, 1960, the plaintiff purchased the alleged fifty per cent interest in the business and commenced conducting the enterprise in partnership with the defendant Richard K. McCann.   Within three and one-half months after that date the plaintiff made additional contributions of $21,500 to the business.   In September, 1961, the lawful owner of the interest allegedly sold appeared and, for the first time, the plaintiff saw the situation in its true light. He thereupon took action to terminate the partnership and brought this bill.   The plaintiff acted promptly after ascertaining the facts, and in no way acquiesced in the actions of

the defendants which affected him. Pursuant to court order, the partnership property was sold and the proceeds employed to pay creditors of the partnership, the balance being retained until further order of the court.

We are concerned solely with "whether the findings of the master are mutually inconsistent or plainly wrong . . . and whether the decree is within the scope of the pleadings and supported by the facts found." *Lukas* v. *Leventhal,* 344 Mass. 762. His findings are final and binding upon us unless they are mutually inconsistent, contradictory, or plainly wrong. *Sykes* v. *Smith,* 333 Mass. 560, 565. *Spencer* v. *Rabidou,* 340 Mass. 91, 92. *Flynn* v. *Korsack,* 343 Mass. 15, 17. No such defects mar the master's report here. Since the master has stated that his conclusions are based upon all the evidence, the court is bound by them unless the subsidiary findings clearly demonstrate that they are unsound, or unless it is unmistakably apparent that they could not be justified upon any evidence before the master. *Norton* v. *Chioda,* 317 Mass. 446, 450. *De Angelis* v. *Palladino,* 318 Mass. 251, 256. *Shoer* v. *Daffe,* 337 Mass. 420, 423.

The court may draw reasonable inferences from the findings. *American Window Cleaning Co. of Springfield, Mass.* v. *Cohen,* 343 Mass. 195, 200. Apparently the master and the judge inferred on justifiable and proper grounds that the plaintiff made his purchase and subsequent further investments in this business in reliance on false representations made in a legerdemain which caused the plaintiff to do as the defendants desired and expected. Their fraud and wrongdoing directly produced the plaintiff's successive contributions. See *McCarthy* v. *Brockton Natl. Bank,* 314 Mass. 318, 328. All the essential elements of deceit were present and proved, and the defendants are liable for the consequences of their fraud which snared the plaintiff and his contributions into their net. *Richards* v. *Todd,* 127 Mass. 167, 173. *Grossman* v. *Lewis,* 226 Mass. 163, 167. Acting in combination as they did, they are jointly and severally liable, *ibid,* 167, and the plaintiff is entitled to be returned to a position as good as that he would have been in

had he not been defrauded.[1]  *Stewart* v. *Joyce,* 205 Mass.
371, 373.  *Rice* v. *Price,* 340 Mass. 502, 508–511.  Williston,
Contracts (Rev. ed.) § 1523.  See G. L. c. 108A, § 39.  He is
also entitled to adequate compensation for those services
rendered by him prior to the termination of the partner-
ship.  *Richards* v. *Todd,* 127 Mass. 167, 173.  Williston,
Contracts (Rev. ed.) §§ 1459 and 1525.  The master found
that he had drawn $100 weekly from the business and that
such an amount was adequate.

The contention of the defendants that they should escape
liability because accounts receivable cards were accessible
to the plaintiff and because he made no effort to ascertain
the exact value of the inventory is without merit.  He was
entitled to rely within reason on their misrepresentations
as being facts within their knowledge and he was under
no obligation to investigate the truth of their statements.
*Yorke* v. *Taylor,* 332 Mass. 368, 374.

> *Decree affirmed with costs.*

---

[1] The final decree ordered the defendants jointly and severally to pay to the
plaintiff $8,000 which he had paid for a one-half interest in the business, and
further sums totalling $21,500, together with interest and costs.  REPORTER.