JOHN P. LUCEY *vs.* HERO INTERNATIONAL CORPORATION.

Berkshire.   January 11, 1972. — April 10, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, & HENNESSEY, JJ.

*Corporation*, Officers and agents.   *Agency*, Scope of authority, Ratification.   *Contract*, Validity, For sale of real estate, Option.

A formal vote of the board of directors of a corporation to sell a certain parcel of land and to authorize the corporation's president to sign the deed "and any other papers needed to effectuate this transfer" did not confer on the president any authority to make in behalf of the corporation an agreement with the buyer giving the buyer an option to purchase subsequently additional land of the corporation, and, in the absence of a ratification of the option agreement by the corporation, the buyer was not entitled to specific performance of the option agreement in a suit in equity against the corporation.   [572–573]

An agreement giving an option to purchase land "as mutually agreed upon by both parties" was too indefinite to be specifically enforced because it did not contain a sufficient description of the land subject to the option but instead left the location for future negotiation between the parties.   [573–575]

BILL IN EQUITY filed in the Superior Court on September 10, 1969.

The suit was heard by *Sgarzi,* J., on a master's report.

*Gerald Gillerman* for the defendant.

*Thomas A. Buckley,* for the plaintiff, submitted a brief.

HENNESSEY, J.   This case involves a bill for specific performance of an option to purchase land.   The defendant appeals from an interlocutory decree confirming the master's report and from a final decree ordering it to convey certain land to the plaintiff.   The evidence is not reported.

We summarize the facts as found by the master. The defendant was the owner of a large tract of land in Richmond. On February 15, 1969, a clergyman, Father John P. Lucey (the plaintiff), offered to purchase five acres of the defendant's land and the buildings thereon for $65,000, and paid a broker $1,000 as a deposit. The broker told the plaintiff that his firm represented one Henry Rose, the defendant's president. At that time no mention was made of the corporation. The broker also prepared a real estate agreement describing the parcel and stating that "This agreement subject to an option to purchase additional land north of the house and along road at rate of $1000.00 per acre." This agreement, however, was not executed.

On March 5, 1969, the defendant's board of directors voted that the corporation sell to the plaintiff "a piece of land on the easterly side of Lenox Road in Richmond, Massachusetts, for the sum of Sixty-Five Thousand ($65,000.00) Dollars and that the President be authorized to sign the deed and any other papers needed to effectuate this transfer." No other corporate vote on this matter was ever taken.

At a closing on March 13, 1969, the defendant conveyed to the plaintiff by warranty deed dated March 10, 1969, the five acre parcel. The transaction was consummated by the defendant's attorney, who, the master found, had authority to deliver the deed and accept the sale price on behalf of the defendant. At that same meeting, the plaintiff executed a real estate sales agreement which contained a paragraph granting the plaintiff "an option to purchase additional land belonging to . . . [the defendant], which said land shall be Northerly of the conveyed premises and along Lenox Road as mutually agreed upon by both parties." The option further provided that the land would be sold at a rate of $1,000 an acre. The master found that the words "as mutually agreed upon by both parties" were inserted at the suggestion of the defendant's attorney "in order to prevent the possibility that the option might be exercised by the

purchase by the plaintiff of any portion of the seller's remaining land which would destroy the value of the residue of the land owned by the seller." The agreement also provided that the option provision "shall survive the closing."

The agreement was mailed to Rose who, without consulting the other officers of the corporation, deleted from the option paragraph the words "which said land shall be Northerly of the conveyed premises and along Lenox Road" and signed the agreement as so modified. The agreement was forwarded to the plaintiff's attorney whose attention was directed to the deletion made by Rose. The attorney was requested to have the plaintiff initial the modified agreement which was subsequently done. The master found that the plaintiff initialed the agreement "for the purpose of indicating his assent to all of the changes made thereon."

In late August, 1969, the plaintiff met Rose and told him that the defendant was obliged to sell to the plaintiff "whatever portion of the defendant's remaining land he wished to buy." Thereupon, the plaintiff hired a registered land surveyor who prepared a plan and a legal description of a five acre parcel selected by the plaintiff alone. The parcel selected was the one located immediately north of the parcel previously purchased. On September 2, 1969, the plaintiff's attorney notified the defendant that the plaintiff had elected to exercise the option with respect to the five acre parcel previously surveyed. Subsequently, Rose offered to sell and convey to the plaintiff a different parcel of land. No agreement was reached, whereupon the plaintiff commenced this litigation.

Since the evidence is not reported, the master's subsidiary facts must stand unless they are "mutually inconsistent, contradictory, or plainly wrong." *Madigan* v. *McCann*, 346 Mass. 62, 64. Since his ultimate findings are conclusions of law, they are subject to review by this court on appeal. *Ryan* v. *Stavros*, 348 Mass. 251, 253.

The defendant advances as grounds for reversing the

final decree that (1) Rose lacked authority to enter into the option agreement on behalf of the corporation; (2) the option agreement was too indefinite to be specifically enforceable; and (3) in any case, the option was not properly exercised by the plaintiff. Since we agree with points (1) and (2) of the defendant's arguments, the final decree must be reversed.

1. The plaintiff has the burden of showing that Rose, as president of the corporation, had authority, either actual or apparent, to enter into the option agreement on behalf of the corporation or that the corporation ratified it with full knowledge of its provisions. *James F. Monaghan Inc.* v. *M. Lowenstein & Sons Inc.* 290 Mass. 331, 333. There were no findings by the master to support an inference that Rose had apparent authority to enter into the option agreement. *Horowitz* v. *S. Slater & Sons, Inc.* 265 Mass. 143, 148. On the basis of the facts, as found by the master, no actual authority existed nor was there any ratification by the corporation. For this reason, the final decree as ordered by the judge was wrong.

The principles applicable to the present case were fully stated in *Kelly* v. *Citizens Fin. Co. of Lowell, Inc.* 306 Mass. 531, 532–533, wherein this court said that "[t]he authority to manage the business affairs of a corporation is primarily vested in its board of directors. Its president and treasurer, merely as the holders of those offices, have little or no inherent power to bind the corporation outside of a comparatively narrow circle of functions specially pertaining to their offices. . . . In the cases in this Commonwealth in which a president or a treasurer has been held to have general authority to make contracts it will be found that such authority has been delegated to him either expressly, by means of some by-law or vote of the directors relative to the matter in question or granting to the officer the powers of a general manager, or impliedly by reason of his continued exercise of similar powers in such a manner that knowledge and approval of the directors or of a majority of them can be reasonably inferred."

In the present case, the directors voted that the corporation sell to the plaintiff "a piece of land on the easterly side of Lenox Road in Richmond, Massachusetts, for the sum of Sixty-Five Thousand ($65,000.00) Dollars and that the President be authorized to sign the deed and any other papers needed to effectuate this transfer." We do not construe this vote as having conferred upon Rose the authority to grant the plaintiff an option to purchase at a subsequent time additional land belonging to the defendant. Since the authorizing instrument was the result of formal corporate action taken at a duly called meeting of the corporation's board of directors, the instrument "can be assumed to spell out the intent of the principal accurately with a high degree of particularity. . . . [S]ince such instruments are ordinarily very carefully drawn and scrutinized . . . it is assumed that the document represents the entire understanding of the parties." Restatement 2d: Agency, § 34, comment h. In this context, the rule that "an agent is not authorized to do acts not incidental to the transaction, not usually done in connection with it or not reasonably necessary," Restatement 2d: Agency, § 35, comment a, is applicable and prevents the corporate vote from being anything more than an authorization to sell the particular parcel described therein for the agreed consideration.

Since there was no express or implied authority on the part of Rose to enter into this option agreement, the issue remains as to whether the corporation ratified the option. On this issue, we observe that the master made no finding of ratification and, on the basis of the subsidiary facts found by him, there is nothing before us to indicate that such a finding could properly have been made. In any event, the plaintiff made no motion to recommit the report to the master for further findings of fact and cannot now complain that no such findings were made.

2. We are also of the opinion that the option agreement is too indefinite to be specifically enforced. For that additional reason, the final decree is wrong. "An option to purchase real estate is a unilateral contract by which the

owner of the property agrees with the holder of the option that he has the right to buy the property according to the terms and conditions of the contract." *Morgan* v. *Forbes*, 236 Mass. 480, 483. Since, therefore, an option is a contract, "[a]ll the essential terms . . . must be definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined." *Cygan* v. *Megathlin*, 326 Mass. 732, 733–734. *Geo. W. Wilcox, Inc.* v. *Shell E. Petroleum Prod. Inc.* 283 Mass. 383, 390. "The court cannot make for the parties a contract which they did not make for themselves." *Read* v. *McKeague*, 252 Mass. 162, 164.

Applying these principles to the present case, we believe that the option provision as finally agreed upon by the parties did not contain a sufficient description of the land subject to the option. The provision stated, "In addition, and for the same consideration . . . [the defendant] will give to . . . [the plaintiff] an option to purchase additional land belonging to . . . [the defendant], *as mutually agreed upon by both parties*" (emphasis added). As written, the words of the provision indicate that the parties contemplated a further agreement with respect to the location of the land subject to the option. To hold, as the plaintiff urges, that this option provision created a unilateral right on his part to designate the particular parcel to be purchased would ignore the very words of the provision. Furthermore, from the master's findings it appears that the words "as mutually agreed upon by both parties" were inserted by the defendant's attorney in order to prevent the exact situation which ultimately occurred, namely, the unilateral selection by the plaintiff of a parcel disagreeable to the defendant. In view of such a finding, we would also frustrate the intention of the parties in adopting the plaintiff's argument.

Given the manner in which the option was written, it is unenforceable. The location of the parcel subject to the option was left for future agreement. "[A]n agreement to enter into a contract which leaves the terms of that

contract for future negotiation is too indefinite to be enforced." *Caggiano* v. *Marchegiano*, 327 Mass. 574, 580. *Rosenfield* v. *United States Trust Co.* 290 Mass. 210, 217. Cf. *Shayeb* v. *Holland*, 321 Mass. 429. "Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise." Williston, Contracts (3d ed.) § 45.

The plaintiff relies on a letter from the defendant's attorney to his attorney in which it was stated that because Rose deleted the description, "[i]t is my interpretation . . . that . . . [the defendant] is enlarging the option given to . . . [the plaintiff]." We first observe that the language requiring a future agreement also appeared in the original provision containing a description of the locus subject to the option. Secondly, the interpretation given, if entitled to any weight, is not necessarily inconsistent with our holding that the parties intended a future agreement since the only effect of deleting the description was to give the plaintiff a right to negotiate and agree with the defendant as to a greater area of land. The requirement of a future agreement, however, remained and is a fatal element of this contract.

The interlocutory decree is affirmed. The final decree is reversed and a new final decree is to enter dismissing the bill.

*So ordered.*