Eugene J. Kesslar, Appellee, v. Raymond Sherman et al., Appellants.

Gen. No. 8,881.

Opinion filed
July 6, 1935.

J. Bruce Amell, David J. Peffers, George R. Warner and Mighell, Allen & Latham, of Aurora, for appellants.

Butters & Butters, of Ottawa, and L. B. Olmstead, of Somonauk, for appellee.

Mr. Justice Dove delivered the opinion of the court.

On October 3, 1931, Homer H. Sherman and his son, Raymond H. Sherman, were indebted to the First National Bank of Aurora in the sum of $6,610, and as evidence of that indebtedness, they executed and delivered to said bank their collateral note for said sum, payable to the order of the bank. This note matured March 1, 1932, and bore six per cent interest per annum. It recited that the makers had pledged with the said bank as collateral security for the payment thereof a junior trust deed upon 221.59 acres of land in La Salle county. On the same day that Homer H. Sherman and Raymond Sherman executed the $6,610 note, Homer H. Sherman executed his note for $7,000 payable to himself and delivered the same, after indorsing it, to the First National Bank of Aurora. This note was secured by said junior mortgage which Homer H. Sherman also executed on October 3, 1931. This mortgage conveyed the premises involved herein to the First National Bank of Aurora as trustee. In January, 1932, Homer Sherman died intestate. There-

after Alvin Sherman was appointed administrator and his estate is being administered in the probate court of Kane county. On June 27, 1932, the bank filed its claim against said estate upon its $6,610 note and the claim was thereafter duly allowed for the sum of $6,901.93. Thereafter, the First National Bank of Aurora, being insolvent, closed and I. H. Hamilton was appointed receiver thereof. On October 14, 1933, the note of $7,000 and the junior trust deed to secure the payment thereof were purchased by appellee, the plaintiff below, from the receiver for $1,800 and the receiver credited upon the original note of $6,610 the amount received from the sale of said collateral. At the June term, 1932, of the circuit court of La Salle county, the first mortgage upon the premises involved herein was foreclosed, resulting in a sale thereof to Edmund C. Haas. Prior to the institution of this proceeding, appellee redeemed from this sale and the master issued to him a certificate of redemption.

On March 30, 1934, this proceeding was instituted by appellee to foreclose the junior trust deed which he had theretofore purchased from Hamilton, the receiver of the First National Bank of Aurora. His complaint recited most of the foregoing facts and further alleged that the bank had obtained judgment upon the $7,000 note in the circuit court of Will county, that a transcript thereof had been filed in the office of the circuit court of La Salle county, but averred that it was for the same indebtedness represented by the trust deed of the plaintiff and that it is in fact the property of the plaintiff. The complaint made all the heirs of Homer H. Sherman, deceased, his administrator and all parties interested parties defendant to this proceeding. Answers were filed and after the issues were made up, a hearing was had, resulting in a decree finding that there was due appellee the sum of $14,240.56. This amount being made up of $6,074.46, which the decree

found appellee had paid in order to redeem the premises from the prior foreclosure sale, together with the sum of $7,859.71, being the principal sum of $6,610, together with interest thereon, and also the further sum of $306.39, being the amount paid out by appellee for taxes. The decree was in the usual form and directed the payment of said $14,240.56, together with solicitor fees, within five days from the entry of the decree, and in default thereof that the mortgaged premises should be sold. It is from this decree that this appeal has been prosecuted by the administrator and heirs of Homer H. Sherman, deceased, and the receiver of the First National Bank of Aurora. They concede that appellee was entitled to redeem from the sale under the decree foreclosing the first lien upon these premises, and that he is entitled to recover the amount he paid to redeem, together with the sums he advanced for the payment of taxes and interest. They insist, however, that inasmuch as the receiver retained the principal collateral note of $6,610 and that appellee only purchased the $7,000 note and junior trust deed given to secure the payment of the same, he was only an equitable assignee of the debt represented by the original collateral note to the extent of the amount he paid for said collateral, which was $1,800, and that therefore the decree is erroneous in finding that there was due him $7,859.71, this sum being the amount of the principal collateral note of $6,610 and interest thereon to the date of the decree.

Appellee insists that the receiver in pursuance to the provisions of the collateral note sold the collateral to him and by so doing, the receiver parted with all his right and interest therein and that in this proceeding appellee is entitled to recover not simply the $1,800, being the amount he paid the receiver therefor, but the amount due upon the principal collateral note of $6,610, he contending that the assignment to him of the

collateral note and mortgage operated as an assignment of the amount due the bank under its principal note. In support of their respective contentions, counsel for appellants and appellees cite the case of *Peacock v. Phillips,* 247 Ill. 467. In that case it appeared that Lillie M. Phillips was the owner of the premises known as 151 Astor street in Chicago and being indebted to the Chicago Savings Bank and Trust Co. in the sum of $2,500, executed a note for that amount and she, with her husband, also executed a note for $4,000 payable to their own order and indorsed the same in blank. They also executed a second mortgage upon said premises to secure the payment of this $4,000 note and delivered this note and mortgage to the bank as collateral security for the payment of their $2,500 note. On April 29, 1907, this note having matured and not being paid, the bank sold the collateral security to J. Arnold Scudder (who knew all the circumstances of the pledge) for $2,530.62, being the amount due the bank. Thereupon the bank canceled the $2,500 note and delivered it to Mrs. Phillips. In a proceeding by the owner of the first trust deed to foreclose the same, he, Scudder, filed his cross-bill, insisting that he was entitled to receive the full amount of his $4,000 note and interest thereon. In refusing to sustain this contention, the court held that the bank might have foreclosed the mortgage pledged to it, but the equities between the parties would have forbidden a decree for any more than the amount due on its $2,500 note, that while the contract between Mrs. Phillips and the bank conferred upon the bank the power of sale and enabled the bank to do an act to obtain payment which could not otherwise have been done, that such a grant of power to sell did not enable the bank to confer a greater right upon the purchaser with full notice of the facts and circumstances and the extent to which the

bank could enforce the obligation, than the bank would have had in case of foreclosure.

The instant case differs from *Peacock v. Phillips, supra,* in that there the collateral was sold for the amount due the pledgee and the principal collateral note for $2,500 having been so paid was thereby discharged and was surrendered by the pledgee to the maker while in the instant case the collateral sold for $1,800, which was much less than the amount due the pledgee and the pledgee simply credited the principal note with the amount received from the sale of the collateral and retained the principal note and now insists that in equity he, the holder of the principal note, is entitled to receive all over the amount which his assignee paid him for the collateral. We do not think there is any merit in this contention. Here appellee paid the receiver $1,800 for the collateral security and by so doing steps into the shoes of the original pledgee and cannot be required to surrender the rights which he acquired except upon payment or tender of the amount of the debt for which this collateral was originally pledged. If appellee had not purchased the collateral and this proceeding had been instituted by the receiver, the decree in the instant case is clearly right. No authority has been cited and we are unable to find any which limits the purchaser of collateral to recover thereon only the amount he paid therefor where it appears that the amount due the pledgee at the time of the sale exceeded the amount the pledgee received therefor. The receiver has no further interest in the collateral which he sold and assigned to appellee. The receiver has parted with his interest therein and appellee has acquired whatever rights he had. The record discloses that the bank filed the principal note as a claim against the Homer Sherman estate and the claim was allowed and the bank has a judgment in its

favor thereon, the same to be paid in due course of administration, but the bank or the receiver has received nothing upon said claim and nothing from any source, except the $1,800 paid to the receiver by appellee for the collateral. If the premises covered by the mortgage sought to be foreclosed herein are sold and appellee receives the full amount so found due him, being the amount due on the $6,610 note, then the makers of the principal note have satisfied that obligation and the receiver is entitled to nothing. If, however, the obligation of the makers of the principal note is not satisfied by the sale of the mortgaged premises, the receiver of the bank still has his claim against the estate of Homer H. Sherman, as well as Raymond H. Sherman, to whom the receiver may look for payment.

The conclusion we have thus arrived at is eminently equitable to all. Raymond H. Sherman and the heirs of Homer H. Sherman (Raymond H. Sherman and Homer H. Sherman being the makers of the principal note of $6,610) cannot complain because under no circumstances will they be liable to pay more than the amount due upon the obligation which they executed to the bank on October 3, 1931. Those obligated upon the $7,000 note and mortgage which Homer H. Sherman executed to secure the payment of the $6,610 note and which he lodged with the First National Bank of Aurora to secure its payment cannot complain because their obligation thereon is limited to the amount due upon the $6,610 note. The receiver is in no position to complain because he sold the collateral and received therefor what must be presumed to have been its value when sold or else he would not have disposed of it. Although he retained the principal note of $6,610 and credited thereon the amount he received from the sale of the collateral, still, under the facts as disclosed by this record, he, the receiver, by assigning to appellee the $7,000 note and mortgage held by him as collateral, invested appellee with the right to recover thereon to the extent of the amount due upon the principal note

of $6,610, and if that amount is in fact received by appellee in this proceeding, the full liability of the makers of the $6,610 note still held by the receiver will have been discharged. This is a proceeding in equity to foreclose upon the collateral and what we hold is that appellee here in this proceeding occupies the identical position that the receiver would occupy if he were the plaintiff.

In 49 C. J. 1031, it is stated that the general rule is that a bona fide pledgee of a chose in action may enforce it for the entire amount thereof against the obligor and will retain the surplus, after the payment of his debt, as trustee for the pledgor, but where the pledgor is also the maker of the collateral note sued on, that then the amount of the pledgee's recovery will be restricted to the principal debt. At page 964 of the same work, the author states that the pledgee, having merely a special property in the pledge as security for his debt, cannot make a valid assignment of the collateral separate from the debt so as to confer any rights on such assignee as against the pledgor and on the following page it is said that it is a general rule that upon an assignment of his interest in a pledge, the assignee or purchaser steps into the shoes of the original pledgee and cannot be required to surrender the property to the pledgor except upon payment or tender of the debt for which the property was originally pledged. Such also is the holding in *Bradley v. Parks,* 83 Ill. 169; *Belden v. Perkins,* 78 Ill. 449.

The complaint in the instant case alleged that the First National Bank of Aurora procured judgment in the circuit court of Will county upon the note of $7,000, which it held as collateral security, that said judgment is for the same indebtedness represented by the trust deed of the plaintiff and that said judgment in fact belongs to and is the property of the plaintiff. The separate answers of Alvin Sherman and I. H. Hamilton, the receiver, each admitted the allegations of the complaint to the effect that judgment

was taken by the bank upon the $7,000 note, but denied that said judgment or any part thereof was ever purchased by or belonged to the plaintiff. The decree found that at the time of the execution and delivery of the $7,000 note and trust deed, Homer H. Sherman was indebted to the First National Bank of Aurora in the sum of $6,640.38, evidenced by a note of October 3, 1931, for that sum and that the said note of $7,000 and trust deed were given by Sherman and received by the bank as collateral security therefor. The decree also found that there is nothing due to the First National Bank of Aurora on said note of $6,640.38 and further found that the bank procured a judgment in the circuit court of Will county upon this note of $6,640.38 and that ''said judgment is for the same indebtedness represented by said trust deed of the plaintiff herein of October 3rd, 1931, and belongs to and is the property of the plaintiff, Eugene J. Kesslar.'' The only evidence in the record is that the principal collateral note executed on October 3, 1931, by Raymond H. Sherman and Homer H. Sherman was for the sum of $6,610 and there was no evidence produced upon the hearing with reference to any judgment other than the one rendered by the probate court of Kane county upon the claim of the bank upon the original note of $6,610 and this claim was allowed on January 17, 1933, for the sum of $6,901.93.

The decree after ordering the sale of the premises to pay the amount so found due provided that in the event the proceeds derived from the sale were insufficient to pay the amount found due that the master apply the same to the extent to which such proceeds may reach in satisfaction thereof and in the event the premises shall sell for more than sufficient to pay the several amounts so found due that then the surplus should be brought into court by the master to abide the further order of the court. This provision, we think, amply protects appellants as in this event the

obligation of the makers of the $6,610 note and of the $7,000 note and trust deed will have been discharged and the owners of the equity of redemption would be entitled to such surplus and the lower court will be in a position to make the proper orders in connection therewith.

The decree erroneously found that at the time of the execution and delivery of the $7,000 note and trust deed, Homer H. Sherman was indebted to the First National Bank of Aurora in the sum of $6,640.38.

It also erroneously found that there is nothing due the bank on said note and erroneously found that the judgment in Will county was taken by the bank upon the note of $6,640.38 and that this judgment belongs to appellee. All these findings should be eliminated from the decree. There is also an error in computation. The principal note of $6,610 is dated October 3, 1931, and bears six per cent interest from date. The date of the decree is July 30, 1934. The amount due upon this note was $7,730.40 and not $7,859.71. The decree is therefore erroneous in this respect. The amount due plaintiff for which he was entitled to a decree in this proceeding on July 30, 1934, was therefore $14,111.25, made up of the following items, viz.:

| | |
|---|---:|
| The amount he paid to redeem ....$ | 6,074.46 |
| Principal ...................... | 6,610.00 |
| Int. on $6,610 from Oct. 3, 1931 to July 30, 1934 ................. | 1,120.40 |
| Taxes .......................... | 306.39 |
| | $14,111.25 |

The decree of the circuit court of La Salle county will therefore be modified in this court as in this opinion indicated and as so modified will be affirmed. One-half of the costs in this court will be paid by appellee and one-half by appellants.

*Decree modified and as modified affirmed.*